# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SHANNON RIGGLE and DANIEL RIGGLE, | |
| Plaintiffs, | Court File No. _____ |
| vs. | |
| BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS INC., BAYER SCHERING PHARMA AG, and BAYER AG, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiffs, by and through counsel, and for their Complaint against Defendants, allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Shannon Riggle is a resident and citizen of Deer Creek, Minnesota, located in Otter Tail County, Minnesota.

2. Plaintiff Daniel Riggle is the husband of Shannon Riggle and is also a resident and citizen of Deer Creek, Minnesota, located in Otter Tail County, Minnesota.

3. Plaintiff Shannon Riggle was prescribed and ingested Yasmin. While using Yasmin she suffered from chronic cholecystitis requiring a laparoscopic cholecystectomy on July 24, 2004.

4. Plaintiffs allege an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

5. Defendant Bayer Corporation is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Defendant Bayer Corporation is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Corporation conducted regular and sustained business in Minnesota by selling and distributing its products throughout the state of Minnesota and throughout the United States.

6. Defendant Bayer Healthcare Pharmaceuticals, Inc. is a Delaware corporation, with its principal place of business at 6 West Belt Road, Wayne, New Jersey 07470. Bayer Healthcare Pharmaceuticals, Inc. was created by the integration of Bayer Healthcare and a company formerly known as Berlex Laboratories. Defendant Bayer Healthcare Pharmaceuticals, Inc. is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Healthcare Pharmaceuticals, Inc. conducted regular and sustained business in Minnesota by selling and distributing its products throughout the state of Minnesota and throughout the United States.

7. Defendant Bayer Healthcare, LLC is a Delaware company, with its principal place of business at 555 White Plains Road, Tarrytown, New York 10591. Bayer Healthcare, LLC was involved in the integration of Bayer Healthcare and Berlex Laboratories. Defendant Bayer Healthcare, LLC is a citizen and resident of New York and is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling,

marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Healthcare, LLC conducted regular and sustained business in Minnesota by selling and distributing its products throughout the state of Minnesota and throughout the United States.

8. Defendant Bayer Schering Pharma AG is a foreign company headquartered in Berlin, Germany. Bayer Schering Pharma AG is the corporate successor to Schering AG, which was acquired by Bayer AG in 2006. As a result of the acquisition, Schering AG was renamed Bayer Schering Pharma AG. At all times relevant, Defendant Bayer Schering Pharma AG, and/or its corporate predecessors, has been engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Defendant Bayer Schering Pharma AG, and/or its corporate predecessors, conducted regular and sustained business in Minnesota by selling and distributing its products throughout the state of Minnesota and throughout the United States.

9. Defendant Bayer AG is a foreign company headquartered in Leverkusen, Germany and is the parent company and/or holding company for several Bayer entities known collectively as the Bayer Group, which includes the Bayer Defendants named herein. At all relevant times, Defendant Bayer AG and one or more of its groups or divisions has been engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs

3

Yasmin and Yaz. At all relevant times, Defendant Bayer AG conducted regular and sustained business in Minnesota by selling and distributing its products throughout the state of Minnesota and throughout the United States.

10. Berlex Laboratories, Inc. was a Delaware corporation with its principal place of business in Montville, New Jersey. Berlex Laboratories, Inc. was integrated with Bayer Healthcare, leading to the creation of Bayer Healthcare Pharmaceuticals, Inc. Prior to being integrated with Bayer Healthcare to create Bayer Healthcare Pharmaceuticals, Inc., Berlex Laboratories, Inc. was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drugs Yasmin and Yaz. At all relevant times, Berlex Laboratories, Inc. conducted regular and sustained business in Minnesota by selling and distributing its products through the state of Minnesota and throughout the United States.

11. Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, Bayer Schering Pharma AG, and Bayer AG are collectively referred to herein as "Bayer" or "Defendants".

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendants consistent with the United States Constitution as Plaintiffs' claims arise out of Defendants' transaction of business and the commission of tortious acts within the State of Minnesota, and by virtue of Defendants'

substantial, continuous and systematic contacts with the State of Minnesota unrelated to Plaintiffs' claims.

14. Venue in this district is appropriate under 28 U.S.C. §1391(a) and (c) because Plaintiffs reside in the district and a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUD

### Nature of the Case

15. Plaintiff Shannon Riggle brings this case against Defendants for damages associated with her ingestion of the pharmaceutical drug Yasmin, which is an oral contraceptive designed, manufactured, supplied, marketed, and distributed by Bayer Defendants. Plaintiff Shannon Riggle suffered from chronic cholecystitis requiring a laparoscopic cholecystectomy on July 24, 2004, and other medical complications as a direct result of her use of Yasmin. Her husband, Daniel Riggle has suffered loss of consortium.

### Bayer's Combined Oral Contraceptives – Yasmin and Yaz

16. Yasmin and Yaz are birth control pills manufactured and marketed by Bayer. They are combination oral contraceptives, or "COCs", meaning that they contain an estrogen component and a progestin component. Together, these steroidal components work together in COCs to suppress ovulation, fertilization, and implantation of thus prevent pregnancy.

17. Yasmin and Yaz were approved by the Food and Drug Administration for marketing in 2001 and 2006 respectively.

### Yasmin and Yaz Contain a "Fourth Generation" Progestin

18. The estrogen component in Yasmin and Yaz is known generically as ethinyl estradiol. The progestin component is known as drospirenone. Yasmin contains 0.03 milligrams

of ethinyl estradiol, and Yaz contains 0.02 milligrams of ethinyl estradiol. Both products contain 3 milligrams of drospirenone.

19. Yasmin and Yaz are different from other combined hormonal birth control pills in that they contain drospirenone, a progestin that is unlike other progestins available in the United States and was never before marketed in the United States prior to its use in Yasmin.

20. Shortly after the introduction of combined oral contraceptives in the 1960's, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks, and strokes than women not using the pill. As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen. As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks, and strokes.

21. During this time, new progestins were being developed, which became known as "second generation" progestins (e.g. lovenorgestrel). These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks, and strokes and were considered safer for women.

22. During the 1990's, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g. gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") and lungs (pulmonary embolism or "PE"). As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a Warning of the potentially increased risk of thrombosis.

23. Yasmin and Yaz contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.

24.     However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin. No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and Yaz marketed under the trade name Ocella.

25.     Since drospirenone is new, there are not decades of data available to support its safe use as there are with second generation progestins. Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.

26.     One possible mechanism of action is that drospirenone interacts differently with ethinyl estradiol compared to other progestins, such that it does not sufficiently counterbalance the clotting effects of estrogen as do other progestins, particularly the second generation progestins.

27.     Another possible mechanism of action is that drospirenone causes an increase in the potassium levels in the blood, which can lead to a condition known as hyperkalemia if the potassium levels become too high.

28.     Hyperkalemia can cause heart rhythm disturbances, such as extrasystolies, pauses, or bradycardia. If left untreated, hyperkalemia can be fatal.

29.     If hyperkalemia disrupts the normal heart rhythms, the flow of blood through the heart can be slowed to the point that it permits blood clots to form. Blood clots in the heart can then lead to heart attacks, or the clots can break off and travel to the lungs where they can cause pulmonary embolism, or can travel to the brain causing stroke.

30.     Additionally, a dangerous effect of drospirenone is that it acts as a diuretic which travels into the kidney and blocks the aldosterone receptors. Aldosterone is a hormone that increases the reabsorption of sodium and water and the secretion of potassium in the kidneys,

resulting in dehydration. Dehydration may lead to the formation of gallstones. Blocking the aldosterone receptor may also increase the levels of cholesterol in the blood. An excess of cholesterol, calcium and phosphate in the gallbladder reduces gallbladder emptying and results in gallbladder disease.

31. Upon information and belief, Defendants knew or should have known that the use of drospirenone in Yasmin, Yaz and Ocella is known to cause gallbladder disease which required surgical intervention.

32. Indeed, during the brief time that Yasmin and Yaz have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products.

33. In April 2002, the British Medical Journal reported that the Dutch College of General Practitioners recommended that older second generation birth control pills be prescribed in lieu of Yasmin as a result of 40 cases of venous thrombosis among women taking Yasmin.

34. In February 2003, a paper entitled *Thromboembolism Associated With the New Contraceptive Yasmin* was published in the British Medical Journal detailing a Netherlands Pharmacovigilance Centre report of five additional reports of thromboembolism where Yasmin was suspected as the cause, including two deaths.

35. More recently, in May of 2009, two separate studies were published in the British Medical Journal concluding that there is an increased risk of venous thrombotic events associated with combined oral contraceptives containing drospirenone.

36. One paper published in the British Medical Journal on Mary 27, 2009 entitled, *Hormonal contraception and risk of venous thromboembolis: national follow-up study*, concluded that oral contraceptives containing drospirenone were associated with a significantly

higher risk of venous thrombosis than oral contraceptives containing levonorgestrel, a second generation progestin.

37. The other paper published in the British Medical Journal on Mary 29, 2009 entitled, *The venous thrombotic risk of oral contraceptives, effects of oestrogen dose and progestogen type: results of the MEGA case-control study*, concluded that there was a 6.3 fold increase risk of venous thrombotic events associated with oral contraceptives containing drospirenone.

38. In fact, in less than a five-year period, from the first quarter of 2004 through the third quarter of 2008, over 50 reports of death among users of Yasmin and Yaz have been filed with the FDA.

39. These reports include deaths associated with cardiac arrhythmia, cardiac arrest, intracardiac thrombus, pulmonary embolism, and stroke in women in their child bearing years.

40. Some deaths reported occurred in women as young as 17 years old.

41. Significantly, reports of elevated potassium levels are frequently included among the symptoms of those suffering death while using Yasmin or Yaz.

## Over-Promotion of Yasmin and Yaz

42. Defendants market Yasmin and Yaz as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.

43. However, because Yasmin and Yaz contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

44. For example, prior to its integration with Defendant Bayer in 2006, Berlex Laboratories promoted Yasmin's fourth generation progestin, drospirenone, by stating, "Ask about Yasmin, and the difference a little chemistry can make."

9

45. In response, on July 10, 2003, the FDA objected to the characterization that drospirenone was a benefit compared to the progestin used in other combined oral contraceptives and issued a warning letter stating, "FDA is not aware of substantial evidence of substantial clinical experience demonstrating that Yasmin is superior to other COCs or that the drospirenone in Yasmin is clinically beneficial.  On the contrary, FDA is aware of the added clinical risks associated with drospirenone[.]"

46. The FDA's warning letter continued by stating that the advertisement failed "to communicate that the potential to increase potassium is a risk" or that "increased serum potassium can be dangerous."

47. More recently, Defendants advertised that its product Yaz was indicated for treatment of premenstrual syndrome or "PMS", as opposed to the less serious condition of premenstrual dysphoric disorder of "PMDD".

48. Defendants also advertised that Yaz contained the added benefit of preventing or reducing acne.

49. In response, on October 3, 2008, the FDA issued another warning letter to Defendant Bayer for the misleading advertisement, reiterating that the marketing was misleading because it promoted Yaz for medical conditions beyond the limits of the FDA approval, and adding that "Yaz has additional risks because it contains the progestin, drospirenone …which can lead to hyperkalemia in high risk patients, which may result in potentially serious heart and health problems".

50. The FDA further warned in its October 3, 2008 letter that Yaz "does not result in completely clear skin" and that Defendants' "TV Ads misleadingly overstate the efficacy of the drug".

51.     Indeed, the FDA felt Defendants' overpromotion of Yasmin was so severe that it required Bayer to run new TV advertisements to correct the previous misleading Yaz advertisements regarding acne and premenstrual syndrome.

52.     Bayer ultimately agreed to spend at least $20 million on corrective TV advertisements and to submit all Yaz advertisements to the FDA for advanced screening for the next six years.

53.     Most recently, on August 5, 2009, the FDA issued another warning letter to Defendant Bayer regarding the FDA's March 2009 inspection of Bayer's active pharmaceutical ingredient facility in Bergkamen, Germany.  In its letter, the FDA warned that based on its inspection, Bayer's "quality management system fails to ensure that API's [active pharmaceutical ingredients] manufactured and released by [Bayer] meet established specifications".  The active pharmaceutical ingredient drospirenone was specifically referred to by the FDA as one of the ingredients identified as manufactured and released out of specification.

54.     Thus, not only is there evidence based on published scientific literature that Yasmin and Yaz inherently present an increased risk of venous thrombotic events when compared to other oral contraceptives, but there is also evidence of potential manufacturing irregularities associated with Yasmin and Yaz.

### Plaintiff's Use of Yasmin and Her Resulting Injuries

55.     As a result of Defendants' claim regarding the effectiveness and safety of Yasmin, Plaintiff Shannon Riggle's medical provider prescribed and Shannon Riggle began using Yasmin in or about November of 2002.  Plaintiff Shannon Riggle continued to use Yasmin until she was hospitalized for a cholectystectomy due to chronic cholecystitis on July 29, 2004.

56. As a direct and proximate result of using Yasmin, Plaintiff Shannon Riggle suffered the injuries described above.

57. Prior to Plaintiff's use of Yasmin, Defendants knew or should have known that use of Yasmin created a higher risk of gallbladder injuries, deep vein thrombosis and pulmonary embolism than other oral contraceptives on the market, including but not limited to second generation oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers.

58. Therefore, at the time Plaintiff used Yasmin, Defendants knew or should have known that the use of Yasmin created an increased risk to consumers of serious personal injury, including gallbladder disease, deep vein thrombosis, pulmonary embolism, heart attacks, stroke, and even death.

59. Despite the fact that Defendants knew or should have known of the serious health risks associated with the use of Yasmin, Defendants failed to adequately warn Plaintiff Shannon Riggle and/or her health care providers of said serious risks before she used the products.

60. Had Plaintiff Shannon Riggle and/or her health care providers known of the increased risks and dangers associated with Yasmin, she would not have used the product and would not have suffered from cholecystitis requiring a cholecystectomy in July of 2004.

61. As a direct and proximate result of her use of Yasmin, Plaintiff Shannon Riggle suffered physical injury, including but not limited to, conscious pain and suffering, as a result of her chronic cholecystitis and cholecystectomy.

62. As a direct and proximate result of her use of Yasmin, Plaintiff has suffered and will continue to suffer pecuniary losses, including medical expenses.

63. As a direct and proximate result of Plaintiff Shannon Riggle's use of Yasmin and resulting injuries, her husband, Plaintiff Daniel Riggle, has suffered damages and harm, including but not limited to, emotional distress as well as loss of consortium, services, society, companionship, love and comfort.

## FIRST CAUSE OF ACTION

## STRICT PRODUCT LIABILITY

64. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

65. Defendants are the manufacturers, designers, distributors, sellers, and/or suppliers of Yasmin.

66. The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in their manufacture and construction when they left the hands of Defendants, were unreasonably dangerous, and posed a serious risk of injury and death, and failed to conform to product specifications.

67. The Yasmin birth control pills manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective in their manufacture and construction when they left the hands of Defendants in their design or formulation in that, when they left the hands of the Defendants, the foreseeable risks of the product exceeded the benefits associated with their design or formulation.

68. In the alternative, the Yasmin birth control pills manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants were defective in design or formulation in that, when they left the hands of the Defendants, they were more dangerous than an ordinary consumer would expect.

69. The Yasmin birth control pills manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants were defective due to inadequate warning or instruction, because Defendants knew or should have known that the products created a significant risk of serious bodily harm and death to consumers including Plaintiff Shannon Riggle, and Defendants failed to adequately warn of such risks.

70. The Yasmin birth control pills manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendants were defective due to post-marketing warning or instruction, because after the Defendants knew or should have known of the increased risk of serious bodily harm and death from the use of the products, Defendants failed to provide an adequate warning of the product to consumers, including Shannon Riggle and her physician, knowing the product could cause serious injury and death.

71. As a direct and proximate result of Plaintiffs' use of Yasmin as manufactured, designed, sold, supplied, and introduced into the stream of commerce by Defendants, Plaintiff Shannon Riggle has suffered serious physical injury, harm, damages, and economic loss as previously described, and will continue to suffer such harm, damages, and economic loss in the future.

72. As a direct and proximate result of Plaintiff Shannon Riggle's use of Yasmin and resulting injuries, her husband, Plaintiff Daniel Riggle, has suffered damages and harm, including but not limited to, emotional distress as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

73. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent and malicious.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

74. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

75. Defendants had a duty to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions, and/or distribution of Yasmin into the stream of commerce, including a duty to ensure that its product did not pose a significantly increased risk of bodily harm and adverse events.

76. Defendants failed to exercise ordinary care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, promotions and distribution of Yasmin into interstate commerce in that Defendants knew, or should have known, that the product caused such significant increased risk of bodily harm or death and was not safe for use by consumers.

77. Defendants also failed to exercise ordinary care in the labeling of Yasmin and failed to issue to consumers and/or to their health care providers adequate warnings of the increased risk of serious bodily injury or death due to the use of Yasmin.

78. Despite the fact that Defendants knew or should have known that Yasmin posed a serious increased risk of bodily harm to consumers, Defendants continued to manufacture and market Yasmin for use by consumers.

79. Defendants knew or should have known that consumers, such as Plaintiff Shannon Riggle, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

80. As a direct and proximate result of Defendants' negligence, Plaintiff Shannon Riggle suffered serious physical injury, harm, damages, economic loss and non-economic loss, and will continue to suffer such harm, damages, economic and non-economic loss in the future.

81. As a direct and proximate result of Plaintiff Shannon Riggle's use of Yasmin and resulting injuries, her husband, Plaintiff Daniel Riggle, has suffered damages and harm, including but not limited to, emotional distress as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

82. Defendants' conduct as described above, including but not limited to their failure to adequately test Yasmin, to provide adequate warnings, and their continued manufacture, sale and marketing of the products when they knew or should have known of the serious health risks the products created, constitutes oppressive, fraudulent and malicious actions.

## THIRD CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

83. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

84. At all times mentioned herein, Defendants expressly represented and warranted to Plaintiff and her health care providers, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the general public, that Yasmin was a safe and effective prescription birth control product that was fit and proper for its intended use. In reliance upon said warranties, Yasmin was prescribed to, purchased by, and used by Plaintiff Shannon Riggle.

85. The Yasmin birth control product manufactured and sold by Defendants did not conform to these express representations, because it caused serious injury to consumers who used the product.

86. As a direct and proximate result of Defendants' breach of warranty, Plaintiff Shannon Riggle suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

87. As a direct and proximate result of Plaintiff Shannon Riggle's use of Yasmin and resulting injuries, her husband, Plaintiff Daniel Riggle, has suffered damages and harm, including but not limited to, emotional distress as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

88. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent and malicious.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

89. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

90. At the time Defendants designed, manufactured, marketed, sold, and distributed the Yasmin birth control products for use by Plaintiff Shannon Riggle, Defendants knew of the use for which the Yasmin product was intended and impliedly warranted the Yasmin product to be of merchantable quality, fitness, and safe for such use.

91. Plaintiff Shannon Riggle and her health care provider reasonably relied upon the skill and judgment of Defendants as to whether Yasmin was of merchantable quality and safe for its intended use and upon Defendants' implied warranty as to such matters.

92. Contrary to the implied warranty, Defendants' product Yasmin was not of merchantable quality or safe for its intended use because it was unreasonably dangerous as described herein.

93. As a direct and proximate result of Defendants' breach of warranty, Plaintiff Shannon Riggle suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages, and economic loss in the future.

94. As a direct and proximate result of Plaintiff Shannon Riggle's use of Yasmin and resulting injuries, her husband, Plaintiff Daniel Riggle, has suffered damages and harm, including but not limited to, emotional distress as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

95. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent and malicious.

## FIFTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION AND FRAUD

96. Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

97. Defendants are the manufacturers, designers, distributors, sellers or suppliers of Yasmin and, while engaged in the course of such business, made representations to Plaintiff and her physician regarding the character and/or quality of Yasmin for guidance in their decision to select Yasmin for Plaintiff's use.

98. Specifically, Defendants represented that their products were just as safe, and just as effective or more effective, than other birth control products on the market.

99. Defendants' representations regarding the character or quality of Yasmin were untrue.

100. Defendants had knowledge based upon studies, published reports and clinical experience that their product Yasmin created an unreasonable increased risk of serious bodily injury and death to consumers, or should have known such information.

101. Defendants negligently and/or intentionally misrepresented or omitted this information in their product labeling, promotions and advertisements and instead labeled, promoted and advertised their products as safe and effective in order to avoid losses and sustain profits in their sales to consumers.

102. In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to their intended recipients, including Plaintiff and her physician.

103. Plaintiff Shannon Riggle and her physician reasonably relied to her detriment upon Defendants' misrepresentations and/or omissions in their labeling, advertisements, and promotions concerning the serious risks posed by the product. Plaintiff reasonably relied upon Defendants' representations to her and/or her health care providers that Yasmin was just as safe and effective as other types of oral contraceptives for human consumption and/or use and that Defendants' labeling, advertisements and promotions fully described all known risks of the product.

104. As a direct and proximate result of Defendants' negligent and/or intentional misrepresentations or omissions, Plaintiff Shannon Riggle suffered personal injury, economic and non-economic damages, and will continue to suffer such harm, damages and economic loss in the future.

105. As a direct and proximate result of Plaintiff Shannon Riggle's use of Yasmin and resulting injuries, her husband, Plaintiff Daniel Riggle, has suffered damages and harm, including but not limited to, emotional distress as well as loss of consortium, services, society, companionship, love and comfort, and will continue to suffer such harm in the future.

106. Defendants' actions and omissions as identified in this Complaint were oppressive, fraudulent or malicious, so as to warrant the imposition of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. Compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, loss of consortium and other non-economic damages in an amount to be determined at trial of this action;

2. Medical expenses and other economic damages in an amount to be determined at trial of this action;

3. Attorneys' fees, expenses, and costs of this action; and

4. Such further relief as this Court deems necessary, just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

**DATED** this 15th day of February, 2010.                SOLBERG STEWART MILLER & TJON

                                                                         /s/ *Stacey Tjon Bossart*
                                                       STACEY TJON BOSSART (MN #266322)
                                                       MIKE MILLER (ND #03419)
                                                       1129 Fifth Avenue South
                                                       P.O. Box 1897
                                                       Fargo, ND 58107-1897
                                                       Phone: 701-237-3166
                                                       Fax: 701-237-4627
                                                       Attorneys for the Plaintiffs